UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVINE ENTERPRISES, INC., | No. 2:21-cv-00209-JAM-JDP |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| WALMART dba Sam's Wholesale, and DOES 1 through 50, inclusive, | |
| Defendant. | |

Divine Enterprises, Inc. ("Divine"), a trucking company, was hired by now-defunct Svenhard's Swedish Bakery ("Svenhard's") to deliver several truckloads of baked treats to Walmart stores around the country. See First Am. Compl. ("FAC") ¶ 15, ECF No. 16. However, because of Svenhard's bankruptcy, the $218,643.93 owed to Divine for the transport of goods has gone unpaid. Id. With little hope of recovering from Svenhard's, Divine filed suit against Walmart to obtain the unpaid freight charges. Walmart argues that it has no legal responsibility to pay these charges and moves to dismiss Divine's FAC for failing to state a claim upon which relief can be granted. See Mot. to Dismiss ("Mot."),

1

1  ECF No. 17.

2      For the reasons set forth below, the Court GRANTS Walmart's

3  Motion to Dismiss.[1]

4

5                        I.    BACKGROUND

6      Divine, the carrier, was hired by Svenhard's, the shipper,

7  to pick up thirty-five loads of baked goods and transport them to

8  Walmart, the consignee.  FAC ¶ 19.  This was arranged for through

9  the use of bills of lading.  FAC ¶¶ 15, 26.  The bills of lading

10 are the only form of written contract between Divine and

11 Svenhard's.  FAC ¶ 26.

12     Divine picked up the first load of goods from Svenhard's for

13 delivery to Walmart on July 18, 2019, and the last load of goods

14 on October 29, 2019.  FAC ¶ 20.  When a load of goods was

15 delivered to Walmart, Walmart either placed a stamp or sticker on

16 the front or back of the bills of lading and gave a copy of the

17 bills of lading to Divine's drivers.  FAC ¶¶ 32, 33-34.  After

18 the copy of the original bill of lading was received at Divine's

19 headquarters, an invoice was submitted along with a copy of the

20 bill of lading to Svenhard's for payment within 90 to 120 days.

21 FAC ¶ 35.  The combined cost of the delivery of baked goods is

22 $218,643.93.  FAC ¶ 16.  Svenhard's has not paid for any of the

23 loads and Divine can no longer obtain payment from the bakery

24 because it filed for bankruptcy and no longer exists.  FAC ¶ 21.

25     On December 24, 2020, Divine filed suit against Walmart to

26 _____

27 [1] This motion was determined to be suitable for decision without
   oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28 scheduled for May 18, 2021.

recover the costs of delivering Svenhard's baked goods in Placer County Superior Court.  See Notice of Removal, ECF No. 1. Walmart removed the matter to federal court on February 3, 2021. Id.  On March 26, 2021, Divine filed its FAC.  The FAC alleges three claims against Walmart: (1) third party liability of carrier pursuant to an implied-in-fact contract; (2) unjust enrichment; and (3) 49 U.S.C. § 13706 liability.  See FAC ¶¶ 48-61.  Walmart moves to dismiss the FAC in its entirety, arguing the first claim fails because there is no implied-in-fact contract, the second claims fails because California does not recognize unjust enrichment as a stand-alone cause of action, and the third claim fails because 49 U.S.C. § 13706 is inapplicable here.  See generally Mot.  Divine opposes the motion.  See Opp'n, ECF No. 18.  Walmart filed a reply.  See Reply, ECF No. 19.

## II.  OPINION

### A.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Courts must dismiss a suit if the plaintiff fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This plausibility standard requires "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

1 Iqbal, 556 U.S. 662, 678 (2009). At this stage, the court "must

2 accept as true all of the allegations contained in a complaint."

3 Id. But it need not "accept as true a legal conclusion couched

4 as a factual allegation." Id.

5       B.    Implied-in-Fact Contract

6       Divine's first claim against Walmart asserts an implied-in-

7 fact contract between the two parties. See FAC ¶¶ 48-54.

8 Divine alleges that this contract makes Walmart, as consignee,

9 the third party responsible for Svenhard's outstanding bills.

10 See FAC ¶ 49. Specifically, Divine alleges that Walmart

11 "arranged the shipments from [Svenhard's] to Walmart" via the

12 bills of lading, was "aware that [Svenhard's] would be using

13 [Divine]," and was "aware that should [Svenhard's] not pay that

14 [Walmart] would be responsible [] for the freight charges." FAC

15 ¶ 50. Divine further alleges that Walmart, as consignee of all

16 thirty-five loads, "impliedly agreed to pay for these freight

17 charges" should Svenhard's fail to do so. FAC ¶ 51.

18       Walmart advances several reasons why this claim is

19 defective. See Mot. at 5-9. The argument that takes the cake

20 is a simple one that does not require the Court to determine

21 whether certain facts alleged in the FAC are demonstrably false.

22 See Mot. at 5-7. That is: The bills of lading are express,

23 written contracts between Svenhard's and Divine. See Southern

24 Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342

25 (1982) ("The bill of lading is the basic transportation contract

26 between the shipper-consignor and the carrier; its terms and

27 conditions bind the shipper and all connecting carriers."). And

28 it is well established that if a dispute is governed by an

express contract, the terms of that contract control.  See U.S. for Use of Westinghouse Elec. Supply Co. v. Ahearn, 231 F.2d 353, 356 (9th Cir. 1955) ("The terms of the express contract control.  There cannot be an implied contract either in law or in fact contrary in terms to a controlling express contract.").  Here, the express contract makes clear that: (1) the contract is between Svenhard's, the shipper, and Divine, the carrier, as signatories; and (2) the freight charges are to be paid by the shipper.  See Bills of Lading, Ex. 3 to FAC, ECF No. 16-3.

Divine attempts to rebut this well-established principle of law by contending that the bills of lading are subject to the terms and conditions of the Uniform Domestic Straight Bill of Lading Act ("Bill of Lading Act").  See Opp'n at 1-2.  According to Divine, if the shipper does not pay the freight charges, § 7 of 45 C.F.R. Pt. 1035.1, App. B, "imposes an obligation on the consignee" to pay them.  Id.  However, as Walmart points out, Divine omits important language from the bills of lading in its opposition.  The bills of lading state that they are "subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth . . . in the applicable motor carrier classification or tariff if this is a motor carrier shipment."  See Bills of Lading.  Thus, the shipments were subject to the terms and conditions of an applicable classification or tariff, not to all the provisions of the Bill of Lading Act or its associated regulations.  Devine fails to plead any applicable classification or tariff that might allow this Court to find that Walmart is responsible for the unpaid freight charges.  Instead, Divine acknowledges that the bills of lading are

5

complete contracts and that there are no terms other than those in the bills of lading attached as Exhibit 3 to the FAC. See FAC ¶¶ 17-20.

Divine also argues that Walmart is liable for the freight charges because "pre-paid" was not used on the bills of lading. See Opp'n at 7. This argument is similarly without merit as there is no specific format or language required when drafting bills of lading, and the parties are free to create contractual liability among themselves. See Western Home Transp., Inc. v. Hexco, LLC, 28 F.Supp.3d 959, 963-65 (D.N.D. 2014) ("The shipper/consignor and the carrier are free to vary the terms of their contract as they see fit with respect to liability for freight charges and reflect that either in the bill of lading, agreements outside of the bill of lading, or both.").

The language used in the bills of lading is neither contradictory nor ambiguous. These express contracts state, in no uncertain terms, that the contracting parties are Divine and Svenhard's, and the freight charges are to be covered by Svenhard's. Walmart, as consignee, was merely the recipient of the goods. Accordingly, Divine's first claim for liability based on an implied-in-fact contract fails as a matter of law and is DISMISSED WITH PREJUDICE.

C.   Unjust Enrichment

Divine's second claim against Walmart is for unjust enrichment. See FAC ¶¶ 55-57. Walmart argues that this claim fails because California law does not recognize a stand-alone claim for unjust enrichment. See Mot. at 9. The Court agrees. "California does not recognize unjust enrichment as a separate

cause of action." Castillo v. Toll Bros., Inc., 197 Cal.App.4th 1172, at 1210 (2011). Divine concedes as much by failing to contest this argument in its opposition brief. See Ardente, Inc. v. Shanley, 2010 WL 546485, at *6 (N.D. Cal. 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence."); see also E.D. Cal. L.R. 230(c).

Moreover, "[a]s a matter of law, a quasi-contract action for unjust enrichment does not lie where [] express binding agreements exist and define the parties' rights." Mosier v. Stonefield Josephson, Inc., 815 F.3d 1161, 1172 (9th Cir. 2016) (quoting Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc., 94 Cal.App.4th 151, 172 (2001)).

Accordingly, Divine's second claim for unjust enrichment fails as a matter of law and is DISMISSED WITH PREJUDICE.

D. Section 13706

Divine's third claim alleges that Walmart must pay for the shipping costs under 49 U.S.C. § 13706, which sets forth tariff requirements for certain transportation. See FAC ¶¶ 58-61. However, "nothing in the [Interstate Commerce Act ("ICA")] suggests that Congress intended to impose absolute liability upon a consignee for freight charges." In re Penn-Dixie Steel Corp., 6 B.R. 817, 820 (S.D.N.Y. 1980), aff'd 10 B.R. 878 (S.D.N.Y 1981). In fact, carriers are often barred from recovering from a consignee under the ICA where its policy against rate discrimination has not been violated. Id. And where, as here, there is no question as to the amount of freight charges, discrimination is not involved, and the question is only who is responsible for payment, then the purpose of the ICA

is not frustrated by preventing a carrier from collecting freight charges from the consignee and making it look solely to the shipper.  Id.

The FAC and the bills of lading make it abundantly clear that Divine must look solely to Svenhard's for the shipping costs.  Svenhard's alone contracted with Divine for its carrier services via the bills of lading.  See Bills of Lading (signed by Svenhard's and Divine and clearly stating freight charges are to be paid by shipper).  And Divine billed Svenhard's directly for the freight charges, once the goods were delivered to Walmart.  See FAC ¶ 35 ("[Divine] would submit the invoice along with a copy of the bill of lading to [Svenhard's] for payment [to be paid] within 90 to 120 days by [Svenhard's].").  There are no facts alleged in the FAC that indicate that Divine was looking to Walmart for payment.

As in In re Penn-Dixie, "[t]he short and long of the matter is that [Divine's] arrangement with [Svenhard's] contemplated that only [Svenhard's] would be held liable for freight charges."  6 B.R. at 821.  Divine and Svenhard's were free to make this arrangement among themselves without contravening any provision of the ICA.  Id.  The fact that Svenhard's has filed for bankruptcy changes nothing.  "[T]he ICA does not insure collection in every instance."  Id.  Divine does not assert a legally viable claim against Walmart under 49 U.S.C. § 13706.

Accordingly, Divine's third claim for § 13706 liability is DISMISSED WITH PREJUDICE.

E.    Sanctions

Walmart exceeded the Court's five-page limit on reply

8

memoranda.  See Reply; see also Order re Filing Requirements

("Order"), ECF No. 4-2.  Violations of the Court's standing order

require the offending counsel (not the client) to pay $50.00 per

page over the page limit to the Clerk of the Court.  Order at 1.

Moreover, the Court will not consider arguments made past the

page limit.  Id.  In total, Walmart's reply memorandum exceeded

the Court's page limit by 3 pages.  Walmart's counsel must

therefore send a check payable to the Clerk for the Eastern

District of California for $150.00 no later than seven days from

the date of this order.

                        III.   ORDER

    For the reasons set forth above, the Court GRANTS Walmart's

Motion to Dismiss.  Divine's claims against it are DISMISSED WITH

PREJUDICE.

    IT IS SO ORDERED.

Dated: June 2, 2021

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE